Ms. Dreisbull. Thank you, Your Honor. May it please the Court. Tracy Dreisbull, Assistant Federal Public Defender, on behalf of Appellant Roberto Perez. In discussing the principle of party presentation, the Supreme Court observed in green law that counsel almost always know a great deal more about their cases than we do, and this must be particularly true for counsel for the United States, the richest, most powerful, and best represented litigant to come before us. In this case, that same richest, most powerful, and best represented litigant has conceded not only that the District Court applied an erroneous legal standard, but importantly, as the party with the burden of proof that it failed to meet that burden on a contested sentencing issue in a criminal case. The amicus has not identified a single principle of law that the government overlooked or misinterpreted, nor offered any reason to disregard that reasoned exercise of prosecutorial discretion. Of the three dozen cases cited in the amicus brief applying Section 2B3.1b2f of the sentencing guidelines, not a single one of them has ever affirmed a threat of death enhancement on comparable facts. When the guideline was first enacted, Section 2B3.1b2f required an express threat of death. The commentary to that guideline made clear that it was to be applied when the defendant took actions that would instill in a reasonable person in the victim's situation a greater fear than necessary to accomplish the robbery. That made clear, of course, that the guideline was not to be applied in every robbery case, which by definition requires a threat of intimidation or force, a threat of force or violence or intimidation. The guideline was amended in response to a circuit conflict over its interpretation to remove the word express and made clear that the threat could be implied. But the commentary to Amendment 552 to the sentencing guidelines retains the requirement that the threat of death enhancement is to be applied where the defendant places the victim in more fear than necessary to accomplish the robbery. I think it's important to note that the guideline we're talking about today only applies to robbery. Even though the federal statute under which Mr. Perez was convicted encompasses extortion, extortion has a separate guideline. And so you can't be sentenced under this guideline without having made some fear of threat or force or committed an act of intimidation, which is defined by definition a threat of bodily harm. The commentary to the new guideline makes clear that the fear must be a fear of death. It cites six examples. And the only example that does not have an express reference to a weapon or murder includes do what I say or else and has the slashing motion across the throat. The guidelines absolutely do not apply where the defendant makes only a threat of harm. And there should be no doubt that that is the basis on which the enhancement was applied in this case. Now, Amicus and I have a different interpretation of the record, but under either interpretation, this case must be sent back. And I'd like to start with what I think happened. And what I believe happened, if the court looks at page 9 of the sentencing transcript, which is document 38, towards the bottom of the page, the court says, well, we're going to talk about the undisputed facts in paragraphs 3 to 13 in the PSI. The court makes these finding of facts, and then we'll get to the arguments. And he likes to use the word spin. He says, you attorneys can give me your spin after we go through the facts. And then Judge King spends two or three pages going through the facts. And he's saying there's an overall threatening tone to it, but it's sort of conversational. And he's kind of referencing defense counsel's argument that there's a blandness to it. And at some point, the prosecutor tries to interject, and the judge says, he interrupts her. And he says, you've had your chance. The probation officer recommended this. The defendant has objected. And now I'm going to listen to the lawyers and make my finding. And then again on page 13, he makes his finding. He says, I think it should be applied. He only says that there would have been a fear of harm or danger. And then he says, so now, so this is where I think we should come out as a result. But let me make the necessary findings regarding this matter. So he's clearly moved away from the probation officer's recommendation, and he's making his own findings. And what he finds is that the tellers could have been in fear, of danger, should they not comply. He never found that the tellers were in a threat of death. And even if the court thinks that he did adopt the probation officer's recommendation, which I don't think he did, and I would also just emphasize that the addendum was never mentioned during the sentencing hearing, that can't be, because what the probation officer said is this threat would have instilled in the victims a fear of harm, and therefore, it's a fear of death. I mean, the probation officer, it's quoted at page 6 and 14 of the amicus brief, absolutely just made a false equivalency between a fear of harm and a fear of death, which we know the sentencing commission has repeatedly rejected. The proper guidelines in this case should have been, the one point I overlooked, the guidelines do know how to talk about fear of harm and fear of death. They talk about harm and bodily injury and other guidelines. This requires a fear of death. If my client had been sentenced to the low end of the guidelines without the improper two-level enhancement, he would have been sentenced to 37 months. By my calculation, with credit for good time, he would have been released last Tuesday. So, in conclusion, there's no case supporting affirmance that's cited in amicus's very thorough brief. They've offered no reason why the court should reject the government's principled exercise of prosecutorial discretion, and I ask that the case be reversed, or the sentence be reversed. Thank you. Ms. Mariani. Good morning, and may it please the court. I'm Nicole Mariani, appearing on behalf of the United States. Joining me is Assistant United States Attorney Jessica Obanoff, who handled this matter before the district court. Your Honors, the government agrees with Mr. Perez and the court erred in concluding that his offense conduct satisfied the requirements of the threat of death enhancement. And I just want to note, contrary to what amicus contends in her brief, we're not chiming in to help Mr. Perez. We are speaking up to serve the people of the United States. We have a sworn duty to ensure that justice is done for every defendant and that the laws and policies of Congress, which certainly include the powers vested in the Sentencing Commission, are followed. The government does not believe that the extension of the threat of death enhancement to the particular facts of this particular case would comply with the intent and directives of the Sentencing Commission. As my colleague noted, bank robbery can be committed by intimidation. The sentencing guidelines add a two-level enhancement to robbery by intimidation defendants who go beyond the mere requirements of robbery, but then threaten their victims with the ultimate consequence, being death. The binding commentary of the guidelines explain this enhancement applies only when the defendant's conduct should instill in a reasonable person in the victim's circumstance a fear of death. And it enumerates examples of such threats of death, including telling the victim or gesturing to the victim that the defendant will kill her, will detonate a grenade, will shoot her, or will slash her throat. As this court explained in Morell's, it has rejected the contention that making a threat of death, as we've construed that term, is inherent in every bank robbery. Can I ask you a question? Of course. With respect to the test that we should be applying, I agree with what the Third Circuit has said in United States v. Thomas that context can be everything in these cases, and courts should not necessarily equate all threats of violence with threats of death. The reasonable person will view threats as deadly or not depending on innumerable aspects of the situation in which they are made. To a certain extent. I think what Thomas encapsulates part of what is in the sentencing guidelines commentary, which is that it is an objective test, would instill, sorry, that it is an objective test, but that it also has to look at from the position of the victim of the offense. So we do have to look at the overall circumstances of the defendant's conduct, for example, his gestures, what he's wearing. So we can't just look at written words? No, absolutely not. And I think that sort of goes to this case, where the written word, the only thing that Mr. Price threatens is harm. And we need to look at it in the bigger context of he never states or implies he has a weapon. He made no gestures. And his body language don't... Well, the word harm, given the other facts, could translate into death. Absolutely, Your Honor. Suppose there was another, an accomplice. Correct. Standing in the middle of the bank floor, maybe not with a Uzi machine gun, but his hand in a pocket or some such thing. Oh, absolutely. If there was harm plus, we would be in a different case. But what we have on the particular facts is the word harm, period. We otherwise have a defendant who's coming in, making no gestures. His body language and his statements do nothing to indicate he has a weapon. He's wearing a T-shirt. He doesn't have on a disguise. There's no indication his hands aren't visible. And this interaction was conversational, not confrontational. If you look at the second attempted bank robbery, when he comes in, the bank teller goes to the back room, talks to her supervisor, asks them to call the police, and she gives him his money. She keeps chatting with him to stall him until law enforcement arrives. Well, the fact that she keeps chatting, there's a lot of inferences you can draw from that. Correct. Stalling him off or whatever. Right, I mean, I agree. We don't quite know what she's doing, but I think looking at the overall tenor of this defendant, that goes to the fact that there's not harm plus in this case. In other words, the fact that she is able to get away from him and then comes back, does that suggest anything with respect to whether she was in fear of death? I think it can. And I think this is sort of where we get into that muddy area with Thomas where it's an objective standard, but we have to sort of also look at it from the victim's circumstances. And I think while it does not sort of make or break the day, and inform the decision somewhat, it's a bit anecdotal, but it sort of goes to show what all these other factors mean. The fact that we're looking at someone sort of from a more objective standpoint, looking at what he's wearing, what he's saying, what he's doing, where he's holding his hands. And then this sort of shows that all of those factors were certainly present on this bear, and it creates the inference because we do have sort of a bear record. All we know is that there was this note that says, do this and no one will get hurt. And this is a response that was engendered by this particular subjective person in response to that note. If the court has no further questions, in sum, the government believes that the district court both applied the wrong legal standard and had an insufficient factual basis in this particular case to apply the threat of death enhancement, and we join Mr. Perez in respectfully requesting that his sentence be vacated and remanded for resentencing without the application of this enhancement. Thank you. Ms. DelRiego. Good morning, Your Honors. May it please the court, Alyssa DelRiego from Potter's Dorset appointed as amicus to defend the judgment of the district court. Can I ask you some questions? Absolutely. First, thank you for agreeing to this appointment, and thanks to Potter's Dorset as well. I think you have a very tough case here, but we very much appreciate that you're willing to do this. Maybe you can help me out with them. Sure. The first one is, if this threat qualifies as a threat of death, how could somebody pull off a bank robbery and do something less than what Mr. Perez did here and not qualify under the threat of death? I think there are a lot of examples. The defendant could come up and give a note that says, give me all the money, please do this, and I'll just walk away, and we can move on with our day. The defendant could threaten a more specific threat of harm that is limited to, do this, please, or I'll break your legs, or I'll break your fingers, or I'll beat you silly. The beat you up obviously also depends on context. Why does do this and no one will get hurt? Why is that any more violent and death fear creating than any of the examples you've just mentioned? I think because get hurt can encompass a lot of things. It could encompass what I just said, which is breaking your fingers, punching you silly, but it could also encompass death. I don't think it's unreasonable for a teller or any person in this situation to think, oh my goodness, if I don't do what he's saying, I'm going to get hurt. Would you agree that with the Third Circuit's standard as it described it, that context is everything we have to consider, not just the words, but also the context? Absolutely, I do. That being the case, here's my thought on this. It seems kind of strange. I've never heard of a bank robbery where in the first robbery the victim teller is told to give $5,000 whereas says, wait, but I asked for $5,000. Can't you give me any more? She says, oh, okay. She gives another $1,000. He says, no, $5,000. Can't you give me more? Again, $1,000. This goes on five times. That doesn't seem consistent with somebody who's acting under a fear of death. The second time, which we've discussed previously, we have a situation where the victim has to come back if she wanted to, has her supervisor call 911 and then returns and stalls. Again, that doesn't seem consistent with somebody who views themselves under a fear of death. While I agree that it's an objective consideration, I think that tells us something about the context. I wonder if you wanted to address that. Right, I think you addressed actually the first point that was here. Would a reasonable person in this situation fear death? I think they would. Moving on to the context that you just described of the first example, I think the fact that she kept giving him money implied she had a real fear. I think it's reasonable to assume that fear was death. In the second situation, you're right, she went back. When she came back, she was able to stay and make conversation with him to have a fear of death. But what reasonable teller fearing death would disobey Perez's demand for $5,000 and instead hand him $1,000 installments and engage in an iterative process with him? Right, I don't think the facts of this particular teller, I think the fact that she kept giving him money showed that it's objective. And we shouldn't look at the conduct of these particular tellers. It's objective. We should look at whether the reasonable person in this situation would have felt death. There's one thing that strikes me as this. The bank robber wants to get out of there in a hurry. The longer he's in the bank, the more harm I'm going to get behind the counter and beat the living stuff out of you or break your fingers or something. That's going to take too much time. Why would a bank robber do that? I agree. The harm's got to be sudden. Agreed. I can't think of anything more sudden than knocking out the teller so I can get out of there. I can't imagine from an objective test a teller thinking that the bank robber's going to hang around and cause some kind of mayhem. That's not what they do. I agree. And I think particularly when he comes in and says do what I say and nobody will get hurt, I think a reasonable person would assume, oh my goodness, if I'm going to get hurt. Do we know how long the bank robber and the teller are interacting, period of time? I don't think we have that as clear from the record. I don't think it was a very, very long period of time. I think it was a much longer period of time in the second robbery. But again, going to your point, I feel like hearing this or just reading the demand note that says do what I say and nobody will get hurt, I'm thinking the same thing. I'm thinking this guy wants to get out of here quickly. And so if he's going to hurt me fast, he probably has a weapon. And I don't think that's unreasonable. In fact, I think a reasonable person would presume that. This guy is threatening to hurt me if I don't do what I say. In this case, he's wearing a t-shirt, right? So there's not a lot of places for him to hide it in his shirt. It's not like he's got on a baggy jacket. He's got his hand in his pocket, nothing like that. Correct. We don't have that in the record. In one case, a pair of pants. In the other case, a pair of shorts. Even fewer places to hide a weapon. So, don't we have to also take that into account? I think we do. I think that's right. We do have to take all the facts into context. But it doesn't mean that he doesn't have a weapon in the back of his t-shirt. I mean, again, if you're the reasonable person, you're already somewhat stressed in this scenario because you're trying to be robbed. This person just threatened to hurt you if you didn't do what they said. I mean, I don't think it's unreasonable to say, maybe he has a weapon that I just can't see. Maybe he doesn't have it in his pockets, he doesn't have it in his jacket, but he could have it behind him. But, why isn't the district court's characterization of the interaction between the tellers as, as, I think he characterized it as sort of conversational and a bland situation? Why aren't those findings entirely inconsistent with application of the threat of death enhancement? So, I don't think that the district court found that. I think the district court, um, as my colleague was just explaining, was, uh, characterizing the argument of the defense counselor at the hearing. It was saying, um, I think her name was Ms. Cameron, I see what you're saying, that this was more conversational, that this is a very bland situation, and then therefore these people were not in deathly fear. And then it went on to again characterize the governments and saying, well, I see that your spin, that harm could mean death, and therefore these tellers were in deathly fear. I think the district court was just spitting back to both the government and the defendant their arguments at the sentencing hearing. I don't think he necessarily made that finding, but even if he did, I don't think it precludes a finding here that the reasonable teller would have been in death by self-inviolence or by intimidation. Why doesn't that capture all the characteristics of these particular crimes? Because in this particular situation, do what I say and no one will get hurt means do what I say and someone will get hurt, and I think that hurt could encapsulate a death threat. Is the fact that the base offense level covers a multitude of thefts we'll call it. Yes. Including a 2113A bank robbery. Correct. So that's why the specific characteristics are in the guideline is because and they may be duplicative but that doesn't matter because the base offense level is lower than what would be a base offense level if you just had a guideline that applied to 2113A. Agreed. Does that make sense? That does make sense. And I think Judge Polley coming back to your point, I think you're right. I think and I agree with both the appellant and the government that something more is necessary. I just respectfully submit that something more was necessary and that the district court found that. But if it's the situation that because that guideline covers more than 2113A that it's talking about situations whenever there's a bank robbery, there's a threat of death, then that would mean that in every single bank robbery case we would have to apply the threat of death enhancement. If the reasoning is that the mere fact that there's an enhancement doesn't necessarily mean that it doesn't apply to all bank robbery cases because that particular guideline covers more than 2113A bank robberies. So we can't really consider that, right? I mean, you don't agree that I'm just trying to gauge what your position is. I don't think you're saying that the death enhancement applies to all 2113A bank robberies. I'm not. I'm not. I do agree that there's like the, both the government and the appellant explain, there's something more that the death enhancement guideline covers more than 2113A doesn't really have any bearing on our analysis. You would agree with that? I think that's right. I do think, though, that in the different context of what's covered under the guideline, something in a bank robbery, like do this and no one will get hurt, could imply a death threat more than maybe in a car jacking case. The note itself says that something is going to happen if you don't give me the money. Something is going to happen. It implies that, correct? That's the whole purpose of the note. Right. It's to create a greater fear. The purpose of the note is not to frighten the teller to death because if the guy had a gun, the teller will faint dead away and you're not going to get a dime. Sure. The note says something is going to happen. Yes. The question is what would an objective person think might happen? I think an objective person, I think it's a reasonable person, would say maybe nothing is going to happen here, maybe this guy is going to stay calm and everything is going to go smoothly, but maybe not. I could fear death. I think it's reasonable for a teller to fear death. He's having enough brass to come into the bank in the first place so he's not going to fade away. I think that's a reasonable assumption. Yes. And if I may really quickly, I'd like to touch on the standard of review because I think it could make a difference in this case. And I think, again, we agree more than we disagree. It's clear under 3742E that the district court's interpretation of the guidelines is reviewed de novo and it's reviewed again. And the definition of review is reviewed again. And the first time that this court gave a standard of review, the first time, and I apologize, it's not in my brief, was Kanzatter at Lenovo, but findings of facts are reviewed for clear error. And then it went on to apply that clear error standard to the finding of the district court, and I quote finding because that's the language of Kanzatter, the finding that the demand note in that case was a consolidated case, constituted an express death threat, and three times the court mentioned the clear error standard and that's what it applied. So I think as Thomas says, we have to look at the contextual factual situation here, and the district court is much better suited to do that than the appellate court. We're applying a well-established well-understood rule, and it's not a situation where what the district court is doing here is establishing a general rule. It's not as in Murphy where the district court said for the first time I have a weapon is sufficient under the guideline to merit a death threat. It's just finding that in this particular narrow situation, given the factual context here, I find that a death threat was made. And if your honors like, I could address the court statements at the sentencing hearing, but I'm happy to address any other questions. Isn't Murphy this circuit's leading decision on application of the threat of death enhancement in  district court? Did the court  apply a de novo standard? Murphy is probably the most cited opinion, yes, but I don't think Murphy is in any conflict with Kansatter. Kansatter says the same thing. Kansatter says de novo for not only interpretation but application. In Murphy, there was no reason to look at the factual things. The district court there, and I think the ninth circuit and the seventh circuit do a good distinction and the second circuit as well. If you're establishing a general rule, can the statement ever constitute a death threat? That's de novo. You're establishing a new legal principle. If you're looking at the facts of the case